UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11279-GAO

THE SAINT CONSULTING GROUP, INC.,
Plaintiff,

v.

ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,
Defendant.

OPINION AND ORDER
March 30, 2012

O'TOOLE, D.J.

I. **Background**

The plaintiff, Saint Consulting Group Inc., ("Saint") is a Massachusetts consulting firm that specializes in land-use politics and advocacy. Saint is frequently hired to organize campaigns to delay and/or prevent large businesses from opening stores in communities where there is opposition to their presence. Saint acts to increase public awareness, organize public campaigns, and participate in or coordinate administrative, judicial and zoning actions. Saint is often hired by other large businesses, which seek to protect their own market share in particular locations by preventing competitors from opening businesses.

In September 2008, Saint purchased a professional liability insurance policy from the defendant, Endurance American Specialty Insurance Company, Inc. ("Endurance"). Saint purchased this policy to insure against possible litigation resulting from its core business activities.

The parties executed an Insuring Agreement pursuant to which Endurance agreed to pay "Damages and Claim Expenses on behalf of the Insured resulting from any claim first made

against the insured and reported to the Company in writing during the Policy Period or any applicable Extended Reporting Period for any Wrongful Act." (State Court Record at 28 (dkt. no. 3).) There are two pertinent exceptions to the coverage provided. Section III(N) excludes "any Claim based upon or arising out of any actual or alleged price fixing, restraint of trade, monopolization or unfair trade practices including actual or alleged violations of the Sherman Anti-Trust Act, the Clayton Act, or any similar provision or any state, federal or local statutory law or common law anywhere in the world." (Id. at 36.) Section III(Q)(4) excludes coverage resulting from "false, deceptive or unfair business practices, violation of consumer protection laws, or false or deceptive Advertisements other than Personal and Advertising Injury." (Id.)

In June 2010, within the renewed term of the policy, Saint and one of Saint's clients, SuperValu, Inc., were sued in the U.S. District Court for the Northern District of Illinois. This suit ("the Rubloff action") arose from Saint's work on behalf of SuperValu to delay the development of Walmart stores in Illinois. The plaintiffs, real estate developers, allege that Saint executed a "racketeering enterprise and conspiracy through a pattern of racketeering activity involving numerous acts of mail fraud, wire fraud, and other illegal activities. Using lies, deception, document destruction, and sham litigation, administrative, regulatory and zoning proceedings, the racketeering enterprise and conspiracy succeeded in its intended anticompetitive purpose of delaying to death proposed shopping center developments with planned Wal-Mart stores, including Plaintiff's shopping center developments." (Compl. Ex. F, at 2 (dkt. no. 1).) The Rubloff plaintiffs assert violations of the Racketeer-Influenced Organized Crime Act ("RICO"), the Sherman Antitrust Act, the Illinois Antitrust Act, and claims for tortuous interference with prospective economic advantage, common law fraud, abuse of process, and conspiracy. After receiving the Rubloff complaint, Saint forwarded a copy to Endurance and requested defense and

indemnification under the policy. Endurance refused to defend or indemnify Saint on the basis that the claims against Saint are excepted under parts N and Q of the policy.

The plaintiff brought the present action, seeking a declaration that Endurance is required under the policy to defend, and if necessary indemnify, Saint with respect to the Rubloff suit, as well as nine additional claims, including breach of contract, negligence, and breach of the covenant of good faith and fair dealing. The defendant has moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. Discussion

### A. Scope of Policy Coverage

Endurance argues the conduct alleged in the Rubloff action is not covered by its policy by reason of exclusions Q and N. The plaintiff argues that those exclusions do not apply to the Rubloff action but even if they do, Endurance is not entitled to rely on them because it induced the plaintiff to believe that the policy would cover any claims against its core business activities.

An insurer has a duty to defend where allegations against an insured are "reasonably susceptible" to the interpretation that they state claims covered by policy terms. Sterilite Corp. v. Cont'l Cas. Co., 458 N.E. 2d 338, 340 (Mass. App. Ct. 1983). In interpreting the terms of a policy, any ambiguity must be construed against the insurer and any exclusions of coverage must be interpreted in favor of coverage for the insured. Porter v. Clarendon Nat'l Ins. Co., 925 N.E. 2d 58, 61 (Mass. App. Ct. 2010).

The policyholder bears the initial burden of proving policy coverage. Markline v. Travelers Ins. Co., 424 N.E. 2d 464 (Mass. 1981). The burden then shifts to the insurer who must prove the applicability of any policy exclusion. Norfolk & Dedham Mut. Fire Ins. Co. v. Cleary Consultants, Inc., --- N.E. 2d ----, 2011 WL 6226012, at *8 (Mass. App. Ct. 2011). Policy

exclusions can negate a duty to defend only if the facts in the complaint establish that the exclusion applies to all potential liability as a matter of law. Id. In its original application for the insurance policy, Saint was asked to detail the professional services for which it sought coverage. Saint provided the defendant with documentation and information relating to its business practices. Saint also explained that it sought this policy to enable it to defend against possible litigation brought by real-estate developers and major retail companies. On the application, Saint described these services as "management consulting specializing in securing approval of zoning and land use for national and global clients and protecting such clients from unwanted competition." (State Court Record 22.)

The defendant issued the policy, agreeing to indemnify the plaintiff for any "wrongful act," which it defines as "any actual or alleged act, error or omission committed or attempted solely in the performance of or failure to perform Professional Services." (Id. at 34.) As a result of this application, the policy specifically states that it covers the Professional Services of "[a]dvocacy consulting services including: analysis, strategic planning, research recommendations, recruiting, organizing, support management and media communication." (Id. at 47.) The coverage is, however, also qualified by the exclusions noted in the policy.

   1.   *Exclusion N*

Exclusion N exempts from coverage claims "arising out of . . . actual or alleged violations of the Sherman Anti-Trust Act, the Clayton Act, or any similar provision or [sic][1] any state, federal or local law." (Id. at 36.) The Rubloff action specifically includes claims of Sherman Act and Illinois Antitrust Act violations. These claims obviously fall within Exclusion N.

---

[1] Probably intended to be "of."

As for the other claims in the Rubloff action, which may generally be described as state common law claims for business interference, the defendant argues that these "arise out of" Saint's knowingly and willfully restraining trade. The language of Exclusion N is quite broad, covering not just antitrust violations, but also "price fixing, restraint of trade, monopolization or unfair trade practices." Id. This range of anti-competitive conduct suggests the broad scope of the exclusion. See Welch Foods, Inc. v. Nat'l Union Fire Ins. Co., No. 09-12087-RWZ 2010 WL 3928704 (D. Mass. 2010). The state law claims are similarly excluded under Exclusion N.

*2. Exclusion Q*

Exclusion Q excludes claims for "false, deceptive or unfair business practices, violation of consumer protection laws, or false or deceptive Advertisements other than **Personal and Advertising Injury."** (Id. at 36.) The policy defines "personal and advertising injury" as "injury other than Bodily Injury arising out of one or more of the following offenses: 1. unfair competition, dilution, deceptive trade practices, false advertising or misrepresentation, wrongful publication, defamation, slander or libel, produce or service disparagement, trade libel or other tort related to disparagement or harm to the reputation or character or any person or organization in the **Media Communications** or **Advertisements** of the **Named Insured**." (Id. at 33.) The policy defines "media communications" as including distribution and release of data, e-mails, images or text.

The plaintiff maintains that the acts alleged in the Rubloff complaint fall squarely within the definition of "personal and advertising injury," because they related to information it disseminated to the public about the opening of Wal-Mart stores which resulted in the claims of unfair competition, deceptive trade practices and other torts. In essence, Saint argues that the complaint alleges that it disparaged and harmed the reputation of Wal-Mart through its practices

5

and misrepresentations. Under Exclusion Q, this would amount to "personal and advertising injury" that is excluded from the exclusion.

Endurance argues that the "personal and advertising injury" carve-out to exclusion Q does not apply because Saint did not publicly distribute or release data, but rather did so "under the cloak of secrecy." (Def.'s Mot. to Dismiss at 12 (dkt. no. 8).) But determining whether that is true is beyond the scope of inquiry under a Rule 12(b)(6) motion. It cannot be said at this point that Exclusion Q applies or not. The point is not crucial, however, since Exclusion N is fully effective to preclude coverage of the Rubloff action.

*3. Breach of Contract*

To state a claim for breach of contract, as alleged in Count II, the plaintiff must allege that a valid, binding agreement exists between the parties, that the defendant breached its duties under the contract, and that this breach caused damage to the plaintiff. Guckenberger v. Boston Univ., 974 F. Supp. 106, 149 (D. Mass. 1997). Because under Exclusion N the defendant had no duty to defend the Rubloff action, Endurance did not breach its duties under the contract.

*4. Breach of Implied-in-Fact Contract*

The plaintiff claims defendant breached an implied-in-fact contract when it refused policy coverage for the Rubloff action (Count III). Where there is an existing express contract between the parties, Massachusetts law will not imply a contract covering the same subject matter. Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 162 (1st Cir. 2005). Thus, there can be no implied contract between these parties.

*5. Estoppel*

Saint claims that Endurance breached a "contract by estoppel" (Count IV). It alleges that the defendant is estopped from denying coverage of the Rubloff action. Massachusetts law

requires three elements to establish estoppel under an insurance policy: (1) an insurer must say or do something intended to induce conduct by the insured; (2) the insured must act or refrain from acting in reasonable reliance on the insurer's representations; and (3) the insured must suffer a detriment as a result of this reliance. Specialty Nat'l Ins. Co. v. OneBeacon Ins. Co., 486 F.3d 727, 735 (1st Cir. 2007). Here, the plaintiff argues that it relied on the assurances by the defendant that it would be covered in the event of a lawsuit, specifically that it did "induce such action including but not limited to Saint's purchasing the Policy, . . . renewing it, paying substantial premiums thereunder, and refraining from seeking coverage elsewhere." (Compl. ¶ 55.)

The claim is meritless. In the first place the allegations of inducement are much too general. Essentially, Saint says that it sought a policy that would insure it for its "core business operations" (see Comp. ¶ 1) and Endurance offered the policy at issue. The complaint pleads no specific statements of inducement or representation about the scope of the policy coverage, beyond the language of the policy itself. Nor is it alleged that this was anything other than an arm's-length transaction. There is no allegation of a "special relationship" that would impose on Endurance some heightened obligation to look out for Saint's interests. In the absence of any such relationship, there is no reason to conclude that Saint was entitled to rely on Endurance's selection of the policy as suitable. Indeed, under Massachusetts law, such reliance would have been unreasonable as a matter of law. See Massingill v. EMC Corp., 870 N.E.2d 81, 89 (Mass. 2007) (stating, "It is unreasonable as a matter of law to rely on prior oral representations that are (as a matter of fact) specifically contradicted by the terms of a written contract.") The policy said what it said, and in Exclusion N it described some of the kinds of claims that would not be covered. No contract by estoppel is justified.

6. *Breach of the Covenant of Good Faith and Fair Dealing*

The plaintiff also alleges that the defendant breached the implied covenant of good faith and fair dealing (Count V). Every contract in Massachusetts is subject to the implied covenant of good faith and fair dealing. Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E. 2d 806, 820 (Mass. 1991). This covenant ensures both parties will deal with one another honestly and in good faith in both the performance and enforcement of the contract. Id. The scope of the parties' duties under the covenant are governed by the contract. Liss v. Studeny, 879 N.E. 2d 676, 680 (Mass. 2008). It does not, however, create any rights and duties outside the contract, so one cannot prevail on this claim without an enforceable contract. UNO Rest., Inc. v. Boston Kenmore Realty Corp., 805 N.E. 2d 957, 964 (Mass. 2004). Since the defendant's decision to deny coverage under the policy was a proper interpretation of the contract provisions, there can be no breach of the implied covenant of good faith and fair dealing.

7. *Negligence*

The plaintiff asserts that the defendant owed a duty of care in the negotiation, formation, and execution of the insurance policy. The plaintiffs claim that refusal to indemnify it against the Rubloff action constitutes a breach of this duty. These allegations are not sufficient to state a claim for negligence.

8. *Fraud*

Defendant moves to dismiss the plaintiff's fraud claim (Count VII) on the grounds that plaintiff has not met the heightened pleading burden of Rule 9(b) of the Federal Rules of Civil Procedure. To satisfy Rule 9(b), the plaintiff must plead the "who, what, where, and when of the allegedly false or fraudulent misrepresentation." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374

F.3d 23, 29 (1st Cir. 2004). The plaintiff has not pled facts sufficient to overcome the burden of Rule 9(b).

### 9. *Negligent Misrepresentation*

Plaintiff alleges that defendant negligently misrepresented that the insurance policy would cover the plaintiff for claims arising from its core business activities (Count VIII). As with the fraud claim, the complaint contains no specific assertion of the content of a misrepresentation. The implication is that Endurance somehow misrepresented that it would provide coverage notwithstanding any applicable, explicit exclusion, but no specific facts are alleged. The plaintiff has not pled sufficient facts to state a claim for negligent misrepresentation.

### 10. *Massachusetts General Laws Chapter 93A*

The plaintiff alleges that defendant engaged in unfair and deceptive business practices in violation of Chapter 93A of the Massachusetts General Laws (Count IX). An insurance company does not violate 93A where it denies coverage "on the basis of a plausible interpretation of its insurance policy." White v. Am. Cas. Ins. Co., 756 N.E. 2d 1208, 1214 (Mass. App. Ct. 2001) (quoting Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 645 N.E. 2d 1165, 1169 (Mass. 1995)). Here, the defendant's decision to deny coverage of the Rubloff action was a plausible interpretation of the policy, specifically exclusions N and Q. Additionally, there is no other adequately pled misconduct, such as fraud or misrepresentation, that could amount to an unfair act or practice under Chapter 93A.

### 11. *Unjust Enrichment*

The plaintiff's unjust enrichment claim fails because a valid contract exists between the parties. Since this contract governs the interaction between the parties, the plaintiff has an

adequate remedy at law; thus, a claim of unjust enrichment is unavailable. See In re Lupron Mktg. and Sales Practices Litig., 295 F. Supp. 2d 148, 182 (D. Mass. 2003).

### **III.** **Conclusion**

For the foregoing reasons, the defendant's Motion (dkt. no. 8) to Dismiss is GRANTED. A declaration will enter under Count I that Endurance is not required to provide coverage for the Rubloff action. The remaining counts are dismissed for failure to state a claim upon which relief can be granted.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge